**In re BRONSON.**
**Patent Appeal No. 3383.**

Court of Customs and Patent Appeals.
Jan. 28, 1935.

Kwis, Hudson & Kent, of Cleveland, Ohio (Watts T. Estabrook, of Washington, D. C., and Arthur J. Hudson, of Cleveland, Ohio, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting claim 8 of appellant's application for lack of invention in view of the prior art. Claims 9 and 10 of said application were allowed.

Said claim 8 reads as follows: "8. A valve insides comprising a cylindrical barrel having a longitudinal bore therethrough, a valve pin extending through said bore and having a valve proper secured to the pin, said valve cooperating with a seat upon the barrel, and a bar of greater depth than width freely rotatable on the pin and rotatable with

respect to the barrel, said bar having two ends threaded and serving as the means by which the valve insides may be screwed into and retained in a valve stem."

The references cited are: Kraft, 1,307,-980, June 24, 1919; Royer, 1,473,938, November 13, 1923; Shaw, 1,744,338, January 21, 1930; Land (Br.), 9,867, July 7, 1915.

Appellant's alleged invention is described by the Board of Appeals in its decision as follows: "This application relates to a valve insides for a tire valve, the valve insides comprising a seat member provided at its lower end with a valve seat and with a packing which is adapted to fit an inclined shoulder in a standard valve stem. Passing through the seat member is a valve stem bearing a valve at its lower end and a bar at its upper end, the bar being of greater depth than width and free from the seat member. The bar is threaded at its outer edges to cooperate with an interior thread in the valve stem and when threaded downwardly contacts with the upper end of the seat member forcing the seat member into place. Applicant alleges that the structure designed by him provides the maximum area of air passage and maximum strength and at the same time properly guides the valve stem."

Kraft is the principal reference relied upon, in connection with the other references. Kraft's invention is described in his patent as follows:

"The invention is particularly directed to the well-known Schrader valve and is designed to provide a top guide for the valve whereby to insure that the latter shall be properly seated.

"In this type of valve a plug member is provided which screws into the open-ended socket of the valve shell and holds the valve seat in position therein. Such plug member may be formed separately from the seat or may be an integral part thereof. According to the preferred form of the invention the plug member is utilized as a guide for the valve, through the medium of the so-called deflating pin which extends through it. In the usual construction the hole or bore through the plug must be sufficiently large to admit proper quantities of air through the valve in inflating the tire or other device to which the valve is applied. Hence the deflating pin cannot fit so closely as to make a very accurate guide for the valve. In the present invention the plug is formed with a bridge which is provided with a hole of smaller diameter than the main portion of the hole through the plug so that the pin may make a close guiding fit with the bridge, while suitable passages for the air are provided in the sides of the bridge which connect with the main hole through the plug, thus retaining the maximum passage through the latter."

The patent to Royer relates to a device adapted to be screwed on the end of a tire valve stem. It does not purport to disclose valve insides within the valve stem; it does show a bar or upper head with threaded ends to co-operate with threads cut on the inside of a cap, and the bar has greater depth than width.

The patent to Shaw and the British patent to Land relate to valve insides. Shaw discloses a seat member and an integral bar; the bar being of greater depth than width. This bar is not "freely rotatable with respect to the barrel."

The Land patent discloses a threaded nut which is flattened on two sides. It is situated in about the center of the structure shown, and is described as a "bush * * * provided with flats * * * to allow air to pass from the nipple 2 into the valve body 1." The specification also states that this "bush" also serves as a guide to a spindle described. The flattened sides of this nut or bush appear from the drawings to have greater depth than width.

It was the opinion of both the Examiner and the Board that, in view of the references Royer, Shaw, and Land, it would not require invention so to modify the structure disclosed by Kraft as to read upon appellant's claim 8, here involved. Upon this point the Board in its decision said: "Claim 8 appears to distinguish from Kraft only by the limitation of a bar of greater depth than width and would appear to involve only the forming of the bridge in the plug in the device of Kraft of a greater depth than the depth shown. In view of the bars disclosed in the other references of greater depth than width it does not appear to us that it would be a matter of invention to increase the depth of the bridge in the device of Kraft, and we must agree with the examiner that this claim should not be allowed."

Upon the same point the Examiner stated as follows: "To alter the structure of Kraft by making the nut member entirely flat as by cutting away the lower round portion is not invention in view of the other patents showing the use of such flat bars for the same or similar purposes."

It will be observed that the Board was of the opinion that the only modification of Kraft necessary to meet the claim here involved would be to increase the depth of the bridge disclosed by him, while the Examiner went somewhat more into detail, stating that the structure of Kraft could be altered by making his plug, or nut as it is called by the Examiner, entirely flat, as by cutting away the lower round portion thereof, and that such alteration would not involve invention.

Both the Board and the Examiner appear to have overlooked the fact that either "to increase the depth of the bridge" of Kraft or to make the plug entirely flat by cutting away the round portion thereof would prevent the bridge shown by Kraft from being considered a "bar" as called for by claim 8, here involved. While the bridge shown by Kraft might be termed a bar, to deepen it, as suggested by the Board to read on appellant's claim 8, would, it seems to us, prevent it from coming within the term "bar," for it would merely lengthen the legs of the bridge to such an extent that the term "bar" could no longer be applied. The same observation will apply to the statement of the Examiner that the plug of Kraft might be made flat. If that were done, the same result would follow as by increasing "the depth of the bridge," as suggested by the Board. There would be no "bar" left, but there would be a structure with two legs connected across the top; the legs being longer than the connection between them.

In the brief of the Solicitor for the Patent Office we find the following: "* * * Appellant seems to suggest that the Board of Appeals proposed putting longer legs on the bridge J of Kraft, in which case the legs might be less resistant to torque as argued, but it is not seen that the Board of Appeals made any such proposal. The Board of Appeals proposed making the part J thicker or deeper in its vertical dimension as shown in cross section (Fig. 3, R. 15) and it is certainly not seen how such *adding of material* would 'weaken the structure,' as alleged." (Italics ours.)

We find nothing in the decision of the Board or in the decision of the Examiner suggesting the "adding of material" to the plug disclosed by Kraft. The Board merely suggested the increase of "the depth of the bridge," and the Examiner explicitly suggested cutting away a part of the plug of Kraft, without any intimation that anything should be added thereto. We do not think that the flat nuts shown in the other references would suggest to one skilled in the art modifying the plug shown by Kraft so that it would then read upon appellant's claim 8, and it seems clear to us that the modifications suggested by the Patent Office tribunals would prevent the structure as modified from being read on appellant's claim 8.

We are in doubt upon the question of whether claim 8 adequately defines appellant's alleged invention. It may be that it is so broad that, upon that ground, it should be rejected; but the claim was not rejected upon that ground, and we may not here consider it. In re Tucker and Reeves, 54 F.(2d) 815, 19 C. C. P. A. (Patents) 810. The Patent Office tribunals apparently considered that claim 8 adequately points out the "part, improvement, or combination" which appellant claims as his invention disclosed in his specification, but held that the invention claimed lacked patentability, in view of the prior art.

We are also in doubt as to whether the bridge shown by Kraft may properly be said to be "freely rotatable on the pin," as required of the bar in claim 8 here involved. As a matter of fact, the bridge of Kraft is an integral part of the plug disclosed by him, and the bridge is not rotatable on the pin separately from the part of the member described Kraft as a plug. However this may be, we think that on the whole it is manifest that there is at least well-founded doubt with respect to the patentability of the claim, and, in accordance with the well-established rule in such cases, this doubt should be resolved in favor of appellant.

For the reasons stated, the decision of the Board of Appeals upon said claim 8 is reversed.

Reversed.